# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DENA LAWLESS, et al.,<br><br>Defendants. | Civil Action No. 19-13688(MAS)(ZNQ)<br><br>MEMORANDUM OPINION AND ORDER |

This matter comes before the Court upon Defendants Cari Lawless and William Lawless's Joint Motion to Stay the Proceedings Pending Resolution of the State Court Matters and/or to Decline Jurisdiction ("Motion to Stay"). (*See* Notice of Mot. to Stay, ECF No. 21.) Thomas Lawless and Cari Lawless's two minor children ("the children") join that Motion. (T.L. and R.L.'s Sept. 20, 2019, Letter ("TRL") 1, ECF No. 27.) Dena Lawless opposes a stay of these proceedings, (Mem. in Opp'n to Mot. to Stay, ECF No. 30), and Metropolitan Life Insurance Company ("MetLife") opposes a stay while it remains a party to the action, (MetLife's Sept. 20, 2019, Letter ("MLL") 1–2, ECF No. 29).

The parties' initial briefing focused on the exceptional circumstances standard derived from *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). In light of *NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 374 (3d Cir. 1995), in which the Third Circuit "h[e]ld the discretionary standard enunciated in *Brillhart* [*v. Excess Insurance Company of America*, 316 U.S. 491 (1942),] governs a district court's decision to dismiss an action commenced under the interpleader statute during the pendency of parallel state court proceedings," the Court requested the parties provide supplemental briefing on whether the *Colorado River* or

*Brillhart* standard applies. (Text Order, ECF No. 35.) Cari and William[1] submitted a joint supplemental brief advancing the *Brillhart* standard, (Supp. Br. in Support of Mot. 2, ECF No. 36), which the children joined, (T.L. and R.L.'s Nov. 4, 2019, Letter 1, ECF No. 38). And Dena submitted a supplemental brief contending the *Colorado River* standard is more appropriate, but also providing the Court with an analysis under the *Brillhart* standard. (Supp. Mem. in Opp'n to Stay 3–4, ECF No. 37.) For the reasons set forth below, the Court finds the *Brillhart* standard applies and that it is inappropriate, at this stage of the proceedings, to stay the case and deprive MetLife of access to expeditious interpleader relief as provided for by Congress when it enacted 28 U.S.C. § 1335. The Motion to Stay shall be denied without prejudice.

**I.    ALLEGATIONS AND PROCEDURAL HISTORY**

Thomas Lawless ("the Decedent") died on March 5, 2019, causing three life insurance plans to become payable to their identified beneficiaries. (MetLife's Am. Compl. ¶¶ 30–31, ECF No. 4.) Each life insurance plan was maintained by one of the Decedent's former employers, PricewaterhouseCoopers LLP ("PwC"), KPMG LLP, and Ernst & Young LLP ("E&Y"). (*Id.* ¶¶ 9, 14, 22.) The KPMG and PwC plans are purportedly governed by the Employee Retirement Income Security Act ("ERISA"). (*Id.* ¶¶ 16, 24; Mem. in Support of Mot. to Stay 2, ECF No. 21-1.) On June 7, 2018, the designated beneficiary of each plan was changed to Dena, the Decedent's wife. (MetLife's Am. Compl. ¶¶ 2, 12, 20, 28.) Before that, the beneficiary of the PwC plan was William, the Decedent's brother; the beneficiary of the KPMG plan was Cari, the Decedent's ex-wife, and the children as contingent beneficiaries; and the beneficiaries of the E&Y plan were Cari (14%) and the two children (each 43%). (*Id.* ¶¶ 3–6, 13, 21, 29.) MetLife is the administrator of each policy. (*Id.* ¶¶ 39–40.) Cari notified MetLife that she was declaring herself a rival beneficiary due

---

[1] The Court respectfully uses the parties' first names to avoid confusion and to promote readability.

to a marital settlement agreement ("MSA") she had with the Decedent that provided he would maintain two life insurance policies, one benefiting her and another benefiting the children. (*Id.* ¶¶ 34–36.) Cari filed a caveat, (Mem. in Support of Mot. to Stay 7), and on April 10, 2019, Dena filed a complaint in the Superior Court of New Jersey, Chancery Division, Probate Part, seeking to have herself declared an omitted spouse and seeking to be appointed administratrix of the Decedent's estate (herein the "Probate Action"), (Mot. to Stay Ex. A 1, ECF No. 22). MetLife filed this interpleader action, naming Dena, Cari, William, and the children as defendants, in this Court on June 13, 2019, stating it was ready and willing to pay out the benefits under the three plans and asking the Court to allow it to deposit the funds into the Registry of the Court and to determine whom should receive the benefits under the plans. (Compl. ¶¶ 39–41, ECF No. 1; *accord* Am. Compl. ¶¶ 39–41.)

On August 14, 2019, the children filed an answer and counterclaim in the Probate Action through their guardian ad litem; through their counterclaim, the children challenge various transfers of the Decedent's funds, including both the reassignment of benefits and certain *inter vivos* gifts, allegedly caused by Dena's undue influence. (Mot. to Stay Ex. B 15, 16–17, ECF No. 21-4.) The same day, Cari moved in her divorce action against the Decedent before the New Jersey Superior Court, Chancery Division, Family Part, seeking to join the Decedent's estate and Dena to (1) recover unreimbursed costs the Decedent owed for expenses incurred by the children, (2) discover all documents concerning the death benefit paid (or to be paid) to Dena under the KPMG plan, (3) recover her marital coverture fraction of the death benefits of the KPMG plan, (4) have the court find the Decedent violated the MSA, and (5) recover the life insurance benefit due under the MSA (herein the "Family Action"). (Mot. to Stay Ex. D 1–3, ECF No. 21-6.) On September 2, 2019, William filed a third-party complaint in the Probate Action challenging the Decedent's

assignment of Dena as the beneficiary of the PwC plan. (Mot. to Stay Ex. C 1, 7–8, ECF No. 21-5.)

Cari and William now move "for an Order staying these proceedings pending resolution of the pending state court matters and/or to decline jurisdiction." (Notice of Mot. to Stay.) The children join that motion. (TRL 1.) MetLife expressed no opinion about where the claims should be heard, but opposes the stay while it is still a party to the action. (MLL 1–2, ECF No. 29.) Dena opposes a stay. (Mem. in Opp'n to Mot. to Stay, ECF No. 30.)

## II. PARTIES' ARGUMENTS

### A. Cari and William's Arguments in Support of a Stay

Cari and William argue that, even accepting that the MSA is preempted by ERISA, Cari "is still able to pursue her claim for a constructive trust in the Family Part action upon joinder of Dena," and the children "are permitted to assert their claims of undue influence and lack of capacity irrespective of the federal preemption defense." (Mem. in Support of Mot. to Stay 13.) Cari and William assert that the preemption claim is a "red herring." (*Id.* at 20.) They contend that Dena "will seek to assert the preemption argument to dismiss any claim of right that Cari [] asserts . . . . At that point, the Court will be left with state law claims of constructive trust, estoppel, undue influence and lack of capacity." (*Id.* at 21.) Cari and William submit that "[d]eclining jurisdiction . . . would best serve the state courts' interests in comity and would be consistent with long-standing practice of judicial restraint by federal courts as to matters of state law." (*Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).)

Cari and William also argue a stay should be granted because William's state court claim arises under the PwC plan, which is not governed by ERISA, and the children's claim seeks to void various *inter vivos* transfers unrelated to the ERISA-governed plans. (*Id.* at 18.) They contend the actions are parallel and a stay of these proceedings is necessary to avoid piecemeal litigation.

(*Id.* at 19 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16 (1983)).) They add that "there is a general principal [sic] that duplicative litigation in the federal court system is to be avoided based on 'considerations of "wise judicial resources and comprehensive disposition of litigation"'" (*Id.* at 20 (quoting *Colorado River Water Conserv. Dist.*, 424 U.S. at 817).)

### B. The Children's Arguments

In their letter joining the Motion to Stay, the children emphasize the factors outlined in *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) ("(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.") (quotation marks, citations, and alterations omitted)). (TRL 1.) Beginning with factors two and three, the children claim that

> [i]f the Federal matter is not stayed, [they] will have no choice but to litigate, parallel cases, in both Federal and State Courts which will further deplete the probate assets . . . creating a clear case of hardship, result in inequity for [them], complicate the issues in the case, unduly prejudice [them] and result in duplication of efforts and useless attorneys fees and costs.

(*Id.* at 2.) With respect to factor one, they contend MetLife will not be prejudiced by the stay because it is the parties' intention to relieve it from the case, and Dena will not be prejudiced because she will avoid duplicative attorney's fees and costs. (*Id.*) Lastly, with respect to factor four, the children highlight that a discovery schedule had been set in the Probate Action, whereas this case is nascent. (*Id.*)

### C. MetLife's Argument

"MetLife asserts no preference as to where the action is litigated once [it] is no longer a party, however, it [submits] that the action should remain in federal court until [it] is provided

interpleader relief . . . ." (MLL 1.) According to MetLife, all parties agree that it has no interest in the plans, and the parties have engaged in discussions to relieve it from the lawsuit. (*Id.* at 1–2.) Specifically, MetLife states that it offered to put the money into an escrow account if all parties agreed on the account. (*Id.* at 2.) Cari, William, and the children agreed, but Dena "doesn't believe that interpleader relief is available under the law if the money is not deposited or a bond is not first posted." (*Id.*) MetLife disagrees and, due to that issue, the consent order providing it with interpleader relief remains contested by the parties and has yet to be submitted to the Court. (*Id.*)

### D. Dena's Argument

Dena argues that, as a preliminary matter, this case is not parallel to the Probate or Family Action because "those suits do not involve all of the same parties, and feature different claims that fall outside the scope of this proceeding." (Mem. in Opp'n to Mot. to Stay 4.) Dena highlights that MetLife and William are not a party to either action and, while William moved to intervene in the Probate Action, Dena is opposing that motion because his claims involve non-probate assets. (*Id.*) Dena also notes that she is not a party to the Family Action. (*Id.*) She further argues that the forms of relief sought in the Probate and Family Actions are different, with her seeking omitted spouse status, the children challenging *inter vivos* gifts, and Cari seeking to enforce the MSA. (*Id.* at 4–5.) Dena argues the Court should not even reach a *Colorado River* analysis, because the actions are not parallel. (*Id.* at 5.)

"Even if the Court finds parallel litigation," Dena argues "the *Colorado River* factors weigh heavily in favor of this Court exercising its jurisdiction." (*Id.* at 6.) Dena provides the following factors analysis:

> Factor 1 (Jurisdiction Over the Property): No court has asserted jurisdiction over the property. (*Id.*) If the funds are deposited in the Registry of the Court, then that will weigh against stay; if the funds are not placed with any court, then the factor is neutral. (*Id.*)

6

Factor 2 (Convenience of the Forum): The parties are equally proximate to both forums. (*Id.* at 7.) This factor is neutral. (*Id.*)

Factor 3 (Piecemeal Litigation): This factor only weighs in favor of a stay "where there is evidence of a strong federal policy that all claims should be tried in the state courts." (*Id.* (quoting *Ryan v. Johnson*, 115 F.3d 193, 197 (3d Cir. 1997)).) There is no such policy in ERISA interpleader actions. (*Id.* (citing *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004)).) Further, granting a stay would create a greater risk of piecemeal litigation because there is a real possibility the two state courts will render inconsistent verdicts. (*Id.* at 8.) This factor does not support abstention. (*Id.* at 9.)

Factor 4 (Order in Which the Courts Obtained Jurisdiction): The actions in the state courts were taken after MetLife filed this action and after Cari's, the children's, and William's responsive pleadings were due in this case. (*Id.*) This factor weighs against a stay. (*Id.* at 10.)

Factor 5 (Whether Federal or State Law Controls): ERISA governs two of the three policies and Cari and William are mistaken that state law governs their other claims once the preemption issue is decided. (*Id.* at 10–11 (citing *Tinsley v. General Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000)).) This factor weighs against stay. (*Id.* at 11.)

Factor 6 (Protection of Federal Rights): It is not clear that the state courts are adequate because the Probate Court likely does not have jurisdiction over the life insurance policies, which are non-probate assets, and ERISA preempts the MSA unless it meets the definition of a Qualified Domestic Relations Order ("ODRO"), which it does not. (*Id.* at 11–12.) This factor weighs against abstention. (*Id.* at 12.)

Factor 7 (Forum Shopping): The federal action was filed first, and Cari and William have ignored the deadlines to answer, instead "furiously filing motions in state court in an effort to manufacture" parallel proceedings. (*Id.*) Abstention would encourage forum shopping, therefore this factor strongly weighs against a stay. (*Id.*)

**E. Cari and William's Reply**

Cari and William respond that the existence of ancillary claims in the state court proceedings misses the point, and the main question is whether the state court cases raise substantially identical claims and nearly identical allegations and issues. (Mem. In Resp. to Opp'n to Mot. to Stay 4.) Cari and William argue the *Colorado River* factors weigh in favor of stay and allege Dena is engaging in gamesmanship by not signing off on MetLife's interpleader relief so she can argue the actions are not parallel because (1) MetLife is not a party to the state court actions, (2) MetLife cannot obtain interpleader relief in the state actions, and (3) the federal court

7

will assume jurisdiction over the property when MetLife deposits the money with the Court. (*Id.* at 3–5.) Cari and William analyze the *Colorado River* factors as follows:

> Factor 1 (Jurisdiction Over the Property): The interpleader relief Dena is holding up would see the money deposited with either the state court or the attorneys' trust account. (*Id.* at 7.)
>
> Factor 2 (Convenience of the Forum): The children's guardian ad litem is closer to the state court. (*Id.* at 7–8.)
>
> Factor 3 (Piecemeal Litigation): "Generally speaking, family law issues are left to the states," and the United States Supreme Court has generally established a tradition of abstention in questions of family law. (*Id.* at 8 (citing *In re Burrus*, 136 U.S. 586, 594 (1890)).)
>
> Factor 4 (Order in which the Courts Obtained Jurisdiction): Dena's timeline is misleading; before the interpleader action was filed, Dena promised Cari that she would receive $3.5 million dollars in accord with the divorce decree. (*Id.* at 8–9.)
>
> Factor 5 (Whether Federal or State Law Controls): Cari and the children do not dispute the ERISA claims, so the only issues left are the state law claims, which ERISA does not preempt. (*Id.* at 10 (citing *Tinsley*, 227 F.3d at 704).)
>
> Factor 6 (Protection of Federal Rights): The state forum is not inadequate because all the parties consent to MetLife's interpleader relief and the other claims are based on exceptions to ERISA preemption. (*Id.* at 11.)
>
> Factor 7 (Forum Shopping): The timing of the state court actions was the result of Dena's bad faith actions and she should not be permitted to benefit from them. (*Id.*)
>
> Factor 8 (Ability of the State Court to Resolve All Issues): There is no basis to question the state court's ability to determine whether the ERISA exceptions apply. (*Id.* at 11–12.)

### F. Supplemental Briefing

In their supplemental brief, Cari and William contend the *Brillhart* standard applies. (Supp. Br. in Support of Mot. 2.) They argue this matter is parallel to the state actions because there are substantially identical claims, allegations, and issues. (*Id.* at 3.) Discussing the purpose of the interpleader statute, Cari and William argue MetLife is equally protected from being exposed to multiple lawsuits and liability because all the parties agree to interpleader relief, and the only issue delaying MetLife's release is a dispute about whether the Court can grant its relief before the funds

are deposited with the Court. (*Id.* at 5.) With that issue largely resolved, according to Cari and William, the Court must consider which forum is more convenient. (*Id.*)

The children join in Cari and William's supplemental brief, but also provided the Court with a *Colorado River* analysis. (T.L. and R.L.'s Nov. 4, 2019, Letter 1–2.) The children contend that complete identity of the parties is not required for actions to be parallel, and note that MetLife will no longer be a party "once the parties memorialize their previous discussions allowing MetLife the Interpleader relief they requested in a proper consent order." (*Id.* at 2.) They add that, even if MetLife remains a party, that should not prevent a stay because the substantive claims can be litigated in state court. (*Id.*) Moving to the factors, the children argue a stay is warranted because no court has assumed jurisdiction over the property yet, discovery is underway in the Probate Action, litigation in federal court will be duplicative and waste resources, the children have distinct claims in the Probate Action, the state forum is equally convenient, and there is no basis to conclude the state court cannot hear the claims related to ERISA. (*Id.* at 3–4.)

In Dena's supplemental brief, she obliges the Court's request and explains that the dispute between the parties regarding MetLife receiving interpleader relief is language in the draft order that would grant MetLife relief before it deposited, or was even obligated to deposit, the disputed funds with the Court. (Supp. Mem. in Opp'n to Stay 2.) According to Dena, MetLife confirmed that the draft order was intentionally left open-ended due to a disagreement between the parties about jurisdiction. (*Id.*) Moving to the standard, Dena acknowledges that *NYLife Distributors* has not been directly overruled, but highlights that the Supreme Court "previously rejected the idea 'that *Brillhart* might have application beyond the context of declaratory judgments.'" (*Id.* at 4 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995)).) Further, Dena notes that the Third Circuit applies the *Colorado River* standard in mixed-claim cases (i.e., cases where there are

9

both federal and state law claims) and contends this is a mixed-claim case because two of the policies are governed by ERISA. (*Id.* at 4–7.) If the Court applies *Brillhart*, Dena submits a stay is still not warranted for substantially the same reasons outlined above; briefly, that the actions are not parallel because MetLife is not a party to the state actions, that this forum is most equipped to provide relief for MetLife, and that the Probate Court likely does not have jurisdiction over the ERISA-governed plans. (*Id.* at 9–10.) Dena adds that the moving parties failed to file responsive pleadings in this action in an effort to change the forum. (*Id.* at 6–7, 10.)

## III. STANDARD FOR STAYING INTERPLEADER PROCEEDINGS

"The federal interpleader statute, 28 U.S.C. § 1335 [], is a remedial device which enables a person holding property or money to compel two or more persons asserting mutually exclusive rights to the fund to join and litigate their respective claims in one action." *NYLife Distributors, Inc.*, 72 F.3d at 374. "An action commenced under section 1335 typically involves two steps: during the first, the district court determines whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability; during the second, it actually adjudicates the defendants' adverse claims to the interpleaded fund." *Id.* at 375; *accord JPMorgan Chase Bank, N.A., v. Neu*, No. CV 17-3475, 2019 WL 4729269, at *2 (D.N.J. Sept. 26, 2019).

"In *Brillhart* [], the Supreme Court held that federal courts have broad discretion to decline to hear actions arising under the Declaratory Judgment Act." *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 225 (3d Cir. 2017). "Decades later the Court reminded federal courts that they have a 'virtually unflagging obligation' to exercise jurisdiction over actions seeking legal relief." *Id.* (quoting *Colorado River Water Conserv. Dist.*, 424 U.S. at 817). That obligation, however, "does not undermine the discretion inherent in the Declaratory Judgment Act as interpreted in *Brillhart*." *Id.* (citing *Wilton*, 515 U.S. at 286–88). Approximately six months after the Supreme Court reaffirmed *Brillhart* in *Wilton*, the Third Circuit "h[e]ld that the discretionary standard enunciated

in *Brillhart* governs a district court's decision to dismiss an action commenced under the interpleader statute during the pendency of parallel state court proceedings." *NYLife Distributors, Inc.*, 72 F.3d at 382; *see also Nw. Mut. Life Ins. Co. v. Sonia*, No. 2:14-CV-03787(WHW), 2014 WL 4724642, at *3 (D.N.J. Sept. 23, 2014) ("The Third Circuit has instructed that district courts have discretion to dismiss or abstain from an interpleader action when a parallel proceeding exists in state court.").

In applying the *Brillhart* standard in interpleader actions, the Third Circuit instructed that, "as a threshold matter," "the district court should determine . . . whether the state court action is indeed 'parallel'; that is, whether it encompasses the competing claims . . . ." *NYLife Distributors, Inc.*, 72 F.3d at 382. The Court explained "[s]ince the very basis for deference is the avoidance of needless duplicative litigation, the absence of a parallel state proceeding, as we have defined it in this context, would counsel against, if not proscribe, dismissal." *Id.* Further,

> the district court should bear in mind that neither the mere pendency of a parallel state court action nor the mere presence of state law issues . . . would support dismissal; the court must remain cognizant of the purpose of the interpleader statute, ultimately determining where the competing claims that expose the stakeholder to multiple lawsuits and liability "can better be settled."

*Id.* at 382–83. To that end, "the court should evaluate which forum will protect the stakeholder more effectively while providing the claimants with the more efficient, convenient, and expeditious vehicle to settle their dispute . . . ." *Id.* at 383. The Court stated it "expect[ed] the district court to evaluate the conduct of the parties in litigating both the federal and state actions to ensure that procedural fencing, forum shopping or gamesmanship is not rewarded." *Id.* Those considerations, however, were not intended to be comprehensive, and the Third Circuit left "it to the district court to consider any other factors it finds relevant." *Id.*

In exercising its "inherent discretion to stay a proceeding" this Court strives to balance the competing interests. *Akishev*, 23 F. Supp. 3d at 445 (quotation marks omitted). "[T]he suppliant

11

for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *accord Akishev*, 23 F. Supp. 3d at 446. The Courts within the Third Circuit

> generally weigh a number of factors in determining whether to grant a stay including: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Akishev*, 23 F. Supp. 3d at 446 (internal citations, quotations, and alterations omitted). Again, the Court is not constrained to those considerations, and may consider other circumstances present in the case. *Id.* at 446–47.

## IV. A STAY IS NOT APPROPRIATE AT THIS JUNCTURE

### A. MetLife's Claim for Interpleader Relief Precludes Finding this Action Parallel

Beginning with the preliminary issue (i.e., whether this action is parallel to the state actions), the Court looks closely at the two controversies pending before the state courts. The Family Action concerns only Cari's claim that the Decedent violated the MSA. (Mot. to Stay Ex. D, at 1–3.) The Probate Action encompasses (1) the children's counterclaims of undue influence, unjust enrichment, waste of assets and inheritance, lack of capacity, and misappropriation, which seek to invalidate certain *inter vivos* transfers of the Decedent's assets and the reassignment of the beneficiaries on the insurance policies or the imposition of a constructive trust against Dena, (Mot. to Stay Ex. B, at 8–23), (2) William's third-party claims of undue influence, lack of capacity, and unjust enrichment, which seek to have the beneficiary designation for the PwC policy invalidated or reformed, the imposition of a constructive trust, or damages, (Mot. to Stay Ex. C, at 7–12); and (3) Cari's counterclaims of undue influence, conversion, fraud, lack of capacity and unjust

enrichment, which seek the revocation of certain *inter vivos* gifts and account designations, to void or reform the beneficiary designation forms, and to have certain property returned to the children, (Mot. to Stay Ex. E, at 6–13. ECF No. 21-7).

First, the Court finds the Family Action to be of a different character than the Probate Action. Cari's reopening of her divorce action is a claim against the Decedent's estate and Dena as the Decedent's wife. Cari does not directly seek to alter the apparent beneficiaries of the life insurance policies in the Family Action, and instead seeks damages for breach of the MSA. (Mot. to Stay Ex. D, at 1–3.) The Court thus does not find the Family Action parallel.

The Probate Action, on the other hand, does appear to embody the entire controversy that would be heard before this Court once the first issue, whether MetLife is entitled to interpleader relief, is answered. The major difference, at the moment, is that the first question has yet to be answered, and MetLife is not a party to the state court actions. It appears to the Court that MetLife preemptively brought this interpleader action to avoid becoming entangled in other proceedings. The Third Circuit has "never required complete identity of parties for abstention." *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 306 (3d Cir. 2006). But "the purpose of section 1335 . . . [is] assisting a party who fears the vexation of defending multiple claims to a fund or property under his control by providing him the opportunity to satisfy his obligation in a single proceeding." *NYLife Distributors, Inc.*, 72 F.3d at 381. Indeed, as observed by the Third Circuit, "Congress was more interested in providing an opportunity to litigants to resolve disputes, than in creating a duty in the district courts to exercise the jurisdiction given them therein." *Id.* at 382. Under the facts of this case—specifically, because the parties agree that MetLife does not have an interest in the proceeds at issue and is not a party to the state action—and in light of the purpose of section 1335, the Court cannot at this juncture find this action parallel

to the Probate Action. The Court so finds because the aim of the interpleader statute cannot be satisfied in state court. Once this case moves past the first step ("determin[ing] whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability," *id.* at 375), the Court's analysis may be different. Until then, the unavailability of interpleader relief in state court is of sufficient magnitude to prevent the Court from finding this action parallel to the Probate Action.

### B. The Court in Its Discretion Believes a Stay Is Not Appropriate at This Stage

Even assuming *arguendo* that this action is parallel to the Probate Action, the Court would, still find it to be the better course to deny the stay at this stage. As the Third Circuit counseled, courts "must remain cognizant of the purpose of the interpleader statute" and "should evaluate which forum will protect the stakeholder more effectively while providing the claimants with the more efficient, convenient, and expeditious vehicle to settle their dispute . . . ." *Id.* at 382–83. All parties agree MetLife has no interest in the proceeds, they simply disagree about how interpleader relief must be executed. It would defy Congress's intent in enacting the interpleader statute to stay these proceedings and leave MetLife in limbo while the state action is decided. Specifically, it would obstruct the very relief Congress intended to provide innocent stakeholders. Despite arguments that the parties agree MetLife is an innocent party and that its interpleader relief is imminent, the parties have not, in fact, consented to MetLife's relief and the Court cannot ignore or settle that dispute on this Motion.

### V. CONCLUSION AND ORDER

For the reasons set forth above, the Court does not find a stay appropriate at this juncture. Accordingly, the Court having considered the parties' contentions without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), and for the reasons expressed above,

**IT IS** on this 15th **day of November, 2019**

**ORDERED** that Cari Lawless and William Lawless's Joint Motion to Stay the Proceedings Pending Resolution of the State Court Matters and/or to Decline Jurisdiction (ECF No. 21) is **DENIED WITHOUT PREJUDICE**.

_____
ZAHID N. QURAISHI
United States Magistrate Judge